DUN & BRADSTREET, INC.

*v.*

ROBERT E. WORRALL, County Court Clerk.

366 S.W.2d 752.

(*Nashville,* December Term, 1962.)

Opinion filed April 3, 1963.

HARRY PHILLIPS, Nashville, PHILLIPS, GULLETT & STEELE, Nashville, of counsel, for complainant.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, SHELTON LUTON, County Attorney, Nashville, for defendant.

MR. JUSTICE FELTS delivered the opinion of the Court.

This suit was brought to recover taxes and penalties paid under protest by complainant for the year 1960, upon a deficiency assessment made in 1961, under T.C.A. secs. 67-4201 to 67-4203, Item 28, which provides that every person engaged in the business of a collection agency, or of forwarding accounts for collection, shall pay a privilege tax equal to one-third of one percent of his "gross collections."

This statute requires him, on or before January 1st of each year, to pay the county court clerk of the county

where he has his principal place of business the minimum tax (being $300 for the state in cities of 50,000 inhabitants or over), plus a like amount for the county (67-4202) ; and on or before January 15 of the following year, he must file with the clerk a sworn statement showing the amount of his gross collections for the preceding year, and pay the clerk the additional tax, if any, for which he is liable.

Complainant is a foreign corporation, domesticated and doing business in Tennessee, with its principal place of business in Nashville. Ever since 1946, it has been engaged here in the business of furnishing mercantile credit reporting service to its subscribers and also the business of collecting and of forwarding their accounts for collection. Prior to 1960, it had paid only the minimum at the first of each year and at the end of the year had made no report of its gross collections.

In 1961, the Revenue Department made an audit of complainant's records, which showed that for the year 1960, its "gross collections"—counting those made by itself and those made upon claims forwarded by it to attorneys — aggregated $299,087.63; and a deficiency assessment was based upon that amount, which resulted in complainant having to pay the additional sum of $1,534.31, consisting of taxes, interest and penalties.

It appears that of this amount of $299,087.63 "gross collections," complainant itself collected $185,004.11, and $114,083.52 was collected on accounts it forwarded to attorneys, who retained $26,218.74, as their fees, and remitted the balance to complainant. Complainant claims its "gross collections," under this statute, should include only those made by itself and not those made by such

attorneys, because they acted as attorneys not for it, but for the creditors or claimants.

The Chancellor held that the term "gross collections," as here used, include (1) collections made by complainant itself, and (2) collections made on claims forwarded by it to attorneys and remitted by them to complainant, but not (3) the amounts retained by them as their fees; and he decreed accordingly. Both parties appealed, complainant insisting its gross collections include only class (1), while defendant contends they include all three classes.

When an account is placed with complainant, it undertakes to collect the same by its own office employees if possible; if not, by forwarding it to a licensed attorney at law for collection. It first writes the debtor a "free-demand" letter asking him to pay. If he pays then, it makes no charge for the collection. But if the first letter is not successful, it follows it with a further letter or letters, and, when necessary, by having one of its employees go to see the debtor and demand payment.

If it collects the claim itself, complainant charges its subscriber, the creditor or claimant, a fee of 18% of the amount collected. If it cannot collect the claim, it forwards the same to an attorney to collect. In doing this, it uses certain printed forms as contracts, one with its subscriber, and the other with such attorney, the one stating that if the claimant does not designate the attorney, it authorizes complainant to do so, and the other stating that the attorney is attorney for, and free to deal with, the creditor, and if he charges an advance retainer, the creditor is to pay it, and if suit is filed, it shall be in the name of the creditor.

As stated, complainant's printed form contract with its subscriber states that the latter has the right to select the attorney but that if he does not do so, he authorizes complainant to do so. But in practice, the proof shows the subscriber does not do so in over one percent of the cases. The usual course is that complainant selects the attorney from commercial law lists, usually upon an agreement with him for contingent fees, according to the schedule set out in such law lists, the same being also set out in complainant's printed form sent to such attorney (Complt's.Ex. 3, Tr., p. 60).

It further appears that in the usual course all correspondence with the attorney is carried on by complainant and such attorney remits to complainant the amount collected less the agreed amount of his fee. Complainant keeps a record of all the sums collected by such attorneys, including all the fees charged by them; and when an attorney remits the amount collected, less his fee, to complainant, it deducts its commission or fee and remits the balance to the creditor.

Complainant's commission on collections made by attorneys on claims forwarded by it to them is based on the total entire amount collected by such attorney, including the amount retained as his fee; and such commission is based on a schedule of the percentages of the whole amount collected by such attorney, being six percent of such amount up to $750, five percent of such amount between $750 and $1,500, and three percent of the amount in excess of $1,500.

The pertinent part of the statute (T.C.A. secs. 67-4201 to 67-4203, Item 28), is in these words:

"Persons engaged in business as collecting, adjusting or forwarding agents or agencies, shall pay a privilege tax equal to one-third of one per cent (⅓%) of the gross collection of each such person.

"Each person doing collecting work or adjusting accounts or acting as forwarding agents of accounts, debts or claims, shall at the time he begins business and annually thereafter, on or before January 1st, pay to the county court clerk of the county in which such person has his principal place of business the minimum privilege tax hereinafter provided for. On or before the 15th day of January following each calendar year in which he has operated, he shall file with the county court clerk an accurate statement under oath setting forth his aggregate gross collections received during such preceding calendar year. At the same time he shall pay to the county court clerk the additional privilege tax, if any, for which he is liable. * * *"

Thus, this statute levies a privilege tax on every person "engaged in business as collecting, adjusting *or forwarding* agents or agencies"—on "Each person doing collecting work or adjusting accounts *or acting as forwarding agents* of accounts, debts or claims"; that is, it makes the business of collecting, *or* of *forwarding* accounts for collection, a taxable privilege, and imposes thereon a tax equal to one-third of one percent of the gross collections.

Where such a person is engaged in both collecting and forwarding accounts for collection, we think the clear and plain intent of the statute is to include and tax both kinds of activities, and to measure the tax by his gross collections from both. Undoubtedly, complainant would be li-

able upon both the collections made by itself, and the collections made upon accounts forwarded by it to the attorneys, if such attorneys are to be regarded as acting for it in making such collections.

Complainant contends, however, that such attorneys are not to be regarded as acting for it, but are attorneys and agents for its subscribers or claimants; that by its contract with its subscribers and by the terms of its forwarding the accounts, such attorney "becomes in fact the attorney for the creditor"; and that, therefore, collections made on such accounts are not to be regarded as any part of its gross collections for the purpose of measuring its tax under this statute.

We think this argument is unsound. The application of this taxing statute depends upon practical considerations rather than the formal or technical legal relation of client and attorney expressed in complainant's printed forms. This is especially true, in view of the fact that in the usual course complainant selects the attorney, and bases its fee upon the entire amount collected by him, and not merely the amount remitted by him less his fee. Quite clearly, complainant treats all such collections as part of its business, upon which it receives substantial compensation.

It is true, as complainant insists, that where a taxing statute is vague or doubtful, it must be construed liberally in favor of the taxpayer; but where, as here, the legislative intent is plain, full effect must be given to it; and "Not only the final purpose of the law must be considered, *but the means of its administration—the ways it may be defeated.*" (citing authority). *Bergeda v. State,* 179 Tenn. 460, 469, 167 S.W.2d 338, 144 A.L.R. 696.

■ So, we think complainant is liable for the privilege tax upon its gross collections, the such collections include not only the collections made by itself, but also the collections made upon claims forwarded by it to attorneys, including the sums retained by such attorneys as their fees, which are to be regarded merely as expenses of collection; and that the Chancellor should have so held.

The Chancellor's decree is modified as above indicated, and, as modified, is affirmed. The cause is remanded to the Chancery Court for further proceedings not inconsistent with this opinion. The costs are adjudged against complainant and its sureties on its appeal bond.

WHITE, JUSTICE, not participating.