RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

*v.*

No. 13-5288

DARNELL MITCHELL,

        *Defendant-Appellant.*

Appeal from the United States District Court
No. 2:10-cr-20299-1—Jon Phipps McCalla, District Judge.

Argued:  January 22, 2014

Decided and Filed:  February 28, 2014

Before:  SUHRHEINRICH, SILER, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Daniel T. French, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Daniel T. French, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

SILER, Circuit Judge.   Defendant Darnell Mitchell appeals the district court's determination that his prior Tennessee state robbery convictions are violent felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  For the following reasons, we **AFFIRM**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mitchell was convicted in 2012 on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  A Presentence Investigation Report ("PSR") was completed that classified Mitchell as an "armed career criminal" on account of having committed three violent felonies:  (1) a 1988 conviction for robbery under now-repealed Tenn. Code Ann. § 39-2-501(a); (2) a 2003 conviction for robbery under Tenn. Code Ann. § 39-13-401; and (3) a 2003 conviction for intentionally evading arrest in an automobile.  The PSR assigned Mitchell a total offense level of 34 and a criminal history category of VI, which resulted in an applicable Guidelines range of 262 to 327 months' imprisonment. Mitchell objected to his armed career criminal classification, arguing that his two robbery convictions did not qualify as "violent felonies."   The district court disagreed and sentenced Mitchell to 300 months' imprisonment.

## II.  STANDARD OF REVIEW

We review de novo a district court's determination that an offense constitutes a "violent felony" under the ACCA.  *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011).

## III. DISCUSSION

Under the ACCA, a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for serious drug offenses or violent felonies must receive a fifteen-year mandatory minimum sentence. *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (citing 18 U.S.C. § 924(e)(1)). The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). We refer to § 924(e)(2)(B)(i) as the "use of physical force" clause and the portion of § 924(e)(2)(B)(ii) following the enumerated offenses as the "residual clause."

## 1. Application of the Categorical Approach

In determining whether a particular offense qualifies as a violent felony, courts must use the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 600, 602 (1990). They must look only to the fact of conviction and the statutory definition of the prior offense and not the particular facts underlying that conviction. *James v. United States*, 550 U.S. 192, 202 (2007); *see also United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008). This approach "avoid[s] the practical difficulties and potential unfairness of permitting a sentencing court to relitigate facts and delve into the details of a prior conviction." *Bartee*, 529 F.3d at 359 (citing *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)).

At issue are Mitchell's 1988 and 2003 robbery convictions under Tennessee law. In 1988, Tennessee law defined robbery as "the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear." Tenn. Code Ann. § 39-2-501(a) (1982) (repealed). The version in effect in 2003 differed only slightly, defining robbery as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401.

### A.  Violent Felony under the "Use of Physical Force" Clause

As a threshold matter, "[t]he meaning of 'physical force' in § 924(e)(2)(B)(i) is a question of federal law, not state law." *Johnson v. United States*, 559 U.S. 133, 138 (2010). "Physical force" in turn is "force capable of causing physical pain or injury to another person." *Id.* at 140 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). However, in determining the meaning or scope of robbery, we are bound by the Tennessee Supreme Court's interpretation, including its guidance on the elements of the crime. *See id.* at 138.

Robbery in Tennessee involves the "felonious" (under the former language) or "intentional" (under the present language) taking of property from the person of another "by violence or putting the person in fear." The Tennessee Supreme Court has applied the plain meaning of "violence," as expressed in both versions of the statute, as "physical force unlawfully exercised so as to injure, damage or abuse." *State v. Fitz*, 19 S.W.3d 213, 214 (Tenn. 2000). The element of violence contained in the robbery statute thus satisfies § 924(e)(2)(B)(i)'s requirement of the "use, attempted use, or threatened use of physical force."

Mitchell relies on *United States v. Fraker* for the proposition that robbery "includes criminal activity outside the scope of the ACCA because a defendant can violate the statute by employing only fear, rather than physical violence or force." 458 F. App'x 461, 463 (6th Cir. 2012) (unpublished). The panel in *Fraker* turned to the colloquial understanding of fear, as opposed to the meaning of fear as interpreted by the Tennessee Supreme Court. When evaluated in the latter context,

there is no doubt that a taking of property carried out through fear, for purposes of Tenn. Code Ann. §§ 39-2-501(a) and 39-13-401, qualifies as a "violent felony" under the ACCA. This is because, as the Tennessee Supreme Court has held, the "fear constituting an element of robbery is a fear of bodily injury and of present personal peril from violence offered or impending." *State v. Taylor*, 771 S.W.2d 387, 398 (Tenn. 1989). Applying the term "violence" derived in *Fitz*, the Tennessee robbery statutes refer to a "fear of bodily injury and of present personal peril from physical force offered or impending." The word "impending" itself means "imminent; threatening." Webster's Revised Unabridged Dictionary 734 (1913). Therefore, the commission of a robbery through fear, which in Tennessee reduces to the fear of bodily injury from physical force offered or impending, directly corresponds to § 924(e)(2)(B)(i)'s "use . . . or threatened use of physical force." Moreover, it is clear that the harm characterized in the Tennessee statutes is of a physical nature, rather than emotional harm or distress.

Our finding is consistent with the manner in which the Seventh Circuit has interpreted an analogous Indiana statute in *United States v. Lewis*, 405 F.3d 511 (7th Cir. 2005). There, the court was confronted with whether a conviction for robbery, in violation of Ind. Code 35-42-5-1, is a "crime of violence" (as defined in USSG § 4B1.2) for purposes of a sentencing enhancement received under § 2K2.1(a)(4)(A) of the Guidelines. *Id.* at 514. "Whether a conviction is a 'violent felony' under § 924(e) is analyzed the same way as whether a conviction is a 'crime of violence' under USSG § 4B1.2." *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013). In Indiana, robbery entails taking property from the person of another by "using or threatening the use of force on any person" or "putting any person in fear." *Lewis*, 405 F.3d at 514. The court went on to explain that the fear in Indiana's formulation "is fear of physical injury rather than of defamation" and had no difficulty in reaching the conclusion that robbery "is readily classified as a crime of violence." *Id.*

The *Fraker* panel neglected to assign the meaning of each element of robbery as construed by the Tennessee Supreme Court. In his reply brief, Mitchell

cites to *United States v. Johnson*, 530 F. App'x 528 (6th Cir. 2013) (unpublished), a case in which the panel adopted the reasoning of *Fraker* and declined to hold that a conviction under Tenn. Code Ann. § 39-2-501 categorically is a violent felony. Like our criticism of *Fraker*, the *Johnson* panel failed to apply the definition of "fear" enunciated by the Tennessee Supreme Court. *See id.* at 532. Neither this court "nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). Contrary to *Fraker* and *Johnson*, robbery in violation of either Tenn. Code Ann. § 39-2-501 or § 39-13-401 is categorically a "violent felony" under § 924(e)(2)(B)(i) of the ACCA.

### B. Violent Felony under the Residual Clause

We also evaluate whether Mitchell's convictions for robbery under Tennessee law categorically qualify as "violent felonies" under the residual clause of the ACCA. Prior to *Begay v. United States*, 553 U.S. 137 (2008), "the only relevant question was whether the offense posed a serious risk of physical injury to others." *United States v. Vanhook*, 640 F.3d 706, 710 (6th Cir. 2011) (citing *James*, 550 U.S. at 207-08). In *Begay*, the Supreme Court recognized this question as only the initial inquiry; "[f]or a crime to qualify as a violent felony, it must also be similar 'in kind as well as in degree of risk posed' to the crimes Congress specifically [enumerated in § 924(e)(2)(B)(ii)]." *Id.* (quoting *Begay*, 553 U.S. at 143). In holding that the crime of driving under the influence ("DUI") is not an ACCA predicate, the *Begay* Court stated that DUI is not "purposeful, violent, and aggressive." 553 U.S. at 144-45. However, the Supreme Court's decision in *Sykes v. United States* distinguished *Begay* as involving "a crime akin to strict liability, negligence, and recklessness crimes." 131 S. Ct. 2267, 2276 (2011). Moreover, *Sykes* clarified that a comparison of "the risk posed by [the crime in question] . . . to that posed by its closest analog among the enumerated offenses" provides "a categorical and manageable standard" relative to the "purposeful, violent, and aggressive" phrase, which bears "no precise textual link to the residual clause." *Id.* at 2273, 2275-76. Nevertheless, "[i]n many cases the purposeful, violent, and

aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same." *Id.* at 2275.

The first layer of inquiry is directed at whether robbery, as characterized by the Tennessee statutes at issue here, presents a serious potential risk of physical injury to another. In the context of larceny from the person, which is a lesser included offense of robbery, we have concluded that "stealing from the person of another" poses a serious risk of injury to others, thus satisfying the initial inquiry. *See United States v. Taylor*, 696 F.3d 628, 631-32 (6th Cir. 2012) (citing *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998)). In arriving at this conclusion, we observed that taking property "from the possession of the victim" is "clearly the type of situation that could result in violence"; victims of "such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence"; violence or harm need not actually result from the theft because the residual clause requires only "a serious *potential* risk of physical injury," and "no situation [can be anticipated] in which larceny from the person could occur without presenting" such a risk. *Id.* (quoting *Payne*, 163 F.3d at 375). As explained by the Tennessee Supreme Court, "[r]obbery is a species of larceny, involving the same elements and turpitude, aggravated by taking from the person by open violence, or putting in fear." *Hammond v. State*, 43 Tenn. (3 Cold.) 129, 134 (1866). Like larceny, robbery requires theft from the person of another, but because robbery additionally requires violence actually dispensed, or putting the victim in fear from violence offered or impending, the crime presents a risk of physical injury that is even greater than that associated with larceny. As the Tennessee Supreme Court emphasized in *State ex rel Anderson v. Winsett*, 399 S.W.2d 741, 743 (Tenn. 1965), "[i]t is violence that makes robbery an offense of greater atrocity than larceny."

Before proceeding to the second layer of the comparative risk inquiry, in which we consider whether robbery is "roughly similar, in kind as well as in degree of risk posed" to the enumerated offenses, *Begay*, 553 U.S. at 142-43, we pause to

revisit the clarification provided in *Sykes* concerning usage of the "purposeful, violent, and aggressive" standard. As recognized by the dissenting opinions in *Sykes*, "[t]he Court now suggests" that "*Begay's* 'purposeful, violent, and aggressive' test . . . applies only to strict liability, negligence, and recklessness crimes." *Sykes*, 131 S. Ct. at 2285 (Scalia, J., dissenting); *see also id.* at 2289 n.1 (Kagan, J., dissenting) ("understand[ing] the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that it is 'redundant' in this case."). Assuming the "purposeful, violent, and aggressive" standard is relevant only where the prior felony lacks "a stringent *mens rea* requirement," *id.* at 2275, both versions of the Tennessee robbery statute would be ineligible for review under the standard. It is clear that Tennessee's current robbery statute, which was in place at the time of Mitchell's 2003 conviction, involves an "*intentional* or *knowing* theft." Tennessee's prior formulation, however, specified a "*felonious* and *forcible* taking." Despite the slight difference in language, this earlier version of robbery nonetheless is a crime of intent. *See Young v. State*, 487 S.W.2d 305, 307 (Tenn. 1972) (finding that robbery requires the specific intent of permanently depriving the owner of the property taken; therefore, it is in the classification of specific intent crimes); *Dillard v. State*, 50 Tenn. (3 Heisk.) 260, 261 (1871) (indicating that the word "feloniously" means "with intent to commit a felony"); *Hammond*, 43 Tenn. (3 Cold.) at 134 ("The same design and malicious purpose or intent necessary in [larceny] must be present in [robbery].").

Separately, Justice Kagan's dissent in *Sykes* raised the point that to limit the "purposeful, violent, and aggressive" test to strict liability, negligence, and recklessness crimes "would collide with *Chambers v. United States*, 555 U.S. 122 (2009)—a decision the majority cites approvingly—which applied the test to an intentional crime." *Sykes*, 131 S. Ct. at 2289 n.1 (Kagan, J., dissenting). Even if the test extended to robbery, the convictions at issue here for violations of Tenn. Code Ann. §§ 39-2-501(a) and 39-13-401 are sufficiently "purposeful, violent, and aggressive" to categorically qualify as "violent felonies" under the residual clause of the ACCA. Purposeful conduct "require[s] that the defendant have acted with [] intent to cause such injury." *Vanhook*, 640 F.3d at 712 (citing *Begay*, 553 U.S. at

145). As previously discussed, robbery in Tennessee, whether under the current or prior statutory formulation, is a crime of intent and echoes the "deliberate kind of behavior" reflected in the violent felonies enumerated in § 924(e)(2)(B)(ii) of the ACCA. *Begay*, 553 U.S. at 147. Furthermore, robbery is the type of violent and aggressive crime generally characterized as a violent felony. Robbery in Tennessee, by definition, is a violent form of theft. *See State v. Swift*, 308 S.W.3d 827, 830 (Tenn. 2010) ("The use of violence or fear elevates theft to robbery."); *State v. Owens*, 20 S.W.3d 634, 638 (Tenn. 2000) ("[W]hether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed."); *Hammond*, 43 Tenn. (3 Cold.) at 134 ("Robbery is a species of larceny . . . aggravated by taking from the person by open violence, or putting in fear."). Aggressive, violent acts are "aimed at other persons or property where persons might be located and thereby injured." *Vanhook*, 640 F.3d at 714 (quoting *United States v. Archer*, 531 F.3d 1347, 1351 (11th Cir. 2008)). Because both versions of the Tennessee robbery statute specify theft "from the person" as an element of the crime, robbery necessarily is a crime that occurs not only "where [a] person[] might be located," but where the presence of another is assured with absolute certainty. Although strict adherence to the "purposeful, violent, and aggressive" rubric is not definitively required, and although its future is in question, robbery nonetheless categorically qualifies as a "violent felony" under this test.

Continuing to the second part of the comparative risk analysis, we evaluate whether robbery is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses in § 924(e)(2)(B)(ii). As for similarity with respect to the degree of risk posed, the offense compares favorably with generic burglary. The Supreme Court in *Sykes* explained that burglary is risky for the reason that it can end in confrontation leading to violence. 131 S. Ct. at 2273; *see also Taylor*, 495 U.S. at 588 ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."). Robbery presents an even greater degree of risk of physical injury relative to burglary, for burglary does not require that the building or structure be occupied when burgled,

*see Taylor*, 495 U.S. at 588, 597, while robbery *requires* another's presence. Whereas burglary raises the mere possibility of confrontation, robbery is defined as to guarantee it.

Robbery is similar also "in kind," or in the "way or manner" it produces the risk of injury, to the enumerated offenses for the following reason: it is not a crime "akin to strict liability, negligence, and recklessness crimes." *Taylor*, 696 F.3d at 632 (quoting *Sykes*, 131 S.Ct. at 2276). It requires intentional conduct. *See Young*, 487 S.W.2d at 307. The Tennessee robberies for which Mitchell was convicted categorically qualify as "violent felonies" under the residual clause of the ACCA. Our view is consistent with decisions from other circuits that have addressed robbery statutes post-*Begay*. *See United States v. Welch*, 683 F.3d 1304, 1311 n.30, 1312 (11th Cir. 2012) (finding that "robbery by sudden snatching"—which means the taking of property "from the victim's person, with intent to permanently or temporarily deprive . . . when, in the course of the taking, the victim was or became aware of the taking"—qualifies as a violent felony under the ACCA's residual clause); *United States v. Carmichael*, 408 F. App'x 769, 771 (4th Cir. 2011) (holding that common law robbery under North Carolina law, which is defined as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear," qualifies as a violent felony under § 924(e)(2)(B)(ii)'s residual clause); *United States v. Gore*, 636 F.3d 728, 744 (5th Cir. 2011) (Higginbotham, J., concurring) (indicating that, "as defined by Texas law . . . robbery [is a] violent felon[y] under the [ACCA's] residual clause") (citing *United States v. Davis*, 487 F.3d 282, 287 (5th Cir.2007)); *Lewis*, 405 F.3d at 514 (holding that robbery under Indiana law, which involves taking property from the person of another by force or putting a person in fear, is a "crime of violence" under Guideline § 4B1.2's "use of physical force" clause and residual clause).

## C. Role of the Modified Categorical Approach

Mitchell advanced a new argument in his reply brief based on the Supreme Court's recent holding in *Descamps v. United States*, 133 S. Ct. 2276 (2013), a case

which clarifies the analytical approach that sentencing courts must use to determine if a prior conviction is a predicate offense under the ACCA. Mitchell now contends that the Tennessee robbery statute is an indivisible statute that defines the crime of robbery overbroadly, and therefore cannot qualify as an ACCA predicate under *Descamps*. According to Mitchell, because "review of plea colloquies or other approved extra-statutory documents" is appropriate "only where a statute defines robbery alternatively, not overbroadly," the "modified [categorical] approach had no role to play in the case." He misreads the distinction between "divisible" and "indivisible" mapped out in *Descamps*.

"[W]hen a prior conviction is for violating a so-called 'divisible statute,'" which "sets out one or more elements of the offense in the alternative," we may resort to a variant of the categorical approach "labeled (not very inventively) the 'modified categorical approach.'" *Descamps*, 133 S. Ct. at 2281. The modified categorical approach is a "tool" used in a "narrow range of cases" to identify which element formed the basis of a defendant's conviction when a statute bears multiple alternative elements. *Id.* at 2287. A court is therefore permitted to "go beyond the mere fact of conviction[,]" *Taylor*, 495 U.S. at 602, and may "consult a limited class of documents" to determine which alternative in a divisible statute gave rise to a conviction, and to compare that conviction to the offense under the ACCA. *Descamps*, 133 S. Ct. at 2281. Where the prior conviction resulted from a guilty plea, we look to documents that identify what facts the defendant "necessarily admitted" by pleading guilty. *United States v. Medina-Almaguer*, 559 F.3d 420, 423 (6th Cir. 2009). Such documents may include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). On the other hand, if a statute is indivisible, it presents no alternatives and the inquiry ends. There is simply no reason to turn to the modified categorical approach. *Descamps*, 133 S. Ct. at 2285.

A divisible statute is necessary but not sufficient for application of the modified categorical approach. Divisibility must be accompanied by another

condition, namely, ambiguity in the statute of conviction. In the context of the ACCA, ambiguity results when "an individual can violate the statute [of conviction] in a way that constitutes a violent felony and in a way that does not." *Johnson*, 707 F.3d at 659. A crime can meet the definition of "violent felony" in any of three ways: (1) the crime falls under the "use of physical force" clause; (2) the crime is one of the statute's enumerated offenses—burglary, arson, extortion, or a crime involving the use of explosives; or (3) the crime falls under the residual clause because it poses a serious potential risk of physical injury to another. § 924(e)(2)(B). In determining the presence or absence of ambiguity, we compare the statute of conviction to the relevant offense under the ACCA. For convictions based on one of the enumerated offenses, e.g., burglary, the enhancement provision is not triggered simply because the crime "happened to be labeled . . . 'burglary' by the laws of the State of conviction." *Taylor*, 495 U.S. at 588. Rather, in drafting the ACCA, Congress was concerned with "crimes having certain specified elements." *Id.* As a consequence, for convictions based on one of the enumerated offenses, we compare the elements of the crime of conviction with the "generic" crime, which has been described as the "generally accepted contemporary meaning of [the] term," *id.* at 596, and the "sense in which the term is now used in the criminal codes of most States." *Id.* at 598. In this way, we ensure that the comparison to the enumerated ACCA crime is anchored in a "uniform definition independent of labels." *Id.* at 592. If the relevant statute has the same elements as the generic ACCA crime or defines the offense more narrowly, then the prior conviction can serve as an ACCA predicate. *Descamps*, 133 S. Ct. at 2283.

A crime outside the enumerated offenses qualifies as a predicate offense if it involves the "use of physical force" as outlined in § 924(e)(2)(B)(i) or poses a serious potential risk of physical injury as outlined in the residual clause of § 924(e)(2)(B)(ii). These two aspects of § 924(e)(2)(B) are not mutually exclusive; a non-enumerated crime may fit both the "use of physical force" clause *and* the residual clause. We compare the elements of conviction for a non-enumerated crime not to the generic, commonly understood definition of that crime—as doing

so would circumvent the ACCA entirely—but rather to the definitions set forth in either the "use of physical force" clause or the residual clause, or both.

In *United States v. Covington*, 738 F.3d 759, 763 (6th Cir. 2014), we recently commented, in light of *Descamps*, that "there are two steps in applying the categorical approach to determine whether a prior conviction constitutes a crime of violence under the Guidelines or a violent felony under the ACCA." The first step is to "ask whether the statute at issue is divisible." *Id.* If so, "the court may look to the *Shepard* documents—but only to see which alternative version of the offense is at issue." *Id.* "Next, the court must ask whether the offense the statute describes, as a category, is a crime of violence" under USSG § 4B1.2(a)—or a violent felony under 18 U.S.C. § 924(e)(2)(B)—which is an inquiry having "as many as three parts" depending on whether the statute of conviction (1) has as an element "the use, attempted use, or threatened use of physical force against the person of another"; (2) matches the elements of one of the enumerated offenses; namely, burglary, arson, extortion, or a crime involving the use of explosives; or (3) involves "conduct that presents a serious potential risk of physical injury to another." *Id.* at 763-64.

This distillation of *Descamps* may give the false impression that the presence of a divisible statute of conviction alone confers on a court the ability to turn to certain approved, extra-statutory documents. However, this is not so. The Supreme Court in *Descamps*, in analyzing a defendant's conviction for burglary, repeated the caveat that "[o]ur decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary . . . alternatively, *with one statutory phrase corresponding to the generic crime and another not*." 133 S. Ct. at 2286 (emphasis added). "In *that* circumstance, a court may look to the additional documents . . . ." *Id.* (emphasis added); *see also id.* at 2284 (recognizing that when a statute "'refer[s] to several different crimes,' not all of which qualify as an ACCA predicate, a court must determine which crime formed the basis of the defendant's conviction." (quoting *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009)).

We make explicit a step in the analysis that the *Covington* panel alluded to implicitly:  if a statute is divisible—in that it sets out one or more elements of the offense in the alternative—at least one, but not all of those alternative elements must depart from:  (1) the elements of the generic ACCA crime (if the conviction is based on an enumerated offense); or (2) the definitions provided in either or both the "use of physical force" clause and residual clause (if the conviction is based on a non-enumerated offense).[1]  *See Descamps*, 133 S. Ct. at 2285 (holding that where "a statute lists multiple, alternative elements, and so effectively creates several different crimes," the modified categorical approach acts as a tool to identify the crime of conviction "[i]f at least one, but not all of those crimes matches the generic version . . . .").  The *Covington* panel, after concluding that Michigan's prison escape statute is divisible, recognized application of the modified categorical approach was appropriate because "the statute lists several, alternative" crimes, "some [of which] involve the element of breaking and some [of which] do not," despite not calling out this condition directly.  *Covington*, 738 F.3d at 764.

Before the Supreme Court in *Descamps* was a California burglary statute, which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary."  133 S. Ct. at 2282 (quoting Cal. Penal Code Ann. § 459).  California's definition of burglary does not require the entry to have been unlawful, in contrast to most burglary laws, which generally demand breaking and entering or similar conduct.  *Id.*  Because California's burglary statute is indivisible in that it does "not contain[] alternative elements," *id.* at 2281, there could be "no uncertainty" as to which element formed the basis of the defendant's conviction.  *Id.* at 2286.  As such, the categorical approach "need[ed] no help from its modified partner."  *Id.*  Separately, because California's burglary statute "sweep[s] so widely" as to "criminalize[] a broader swath of conduct" than the "generic"  definition of burglary, *id.* at 2281-82, the Supreme Court held that a conviction under the California burglary statute could

---

[1]The "either or both" language is meant to depend on whether a party argues the offense is a violent felony under the "use of physical force" clause, the residual clause, or both.

not serve as an ACCA predicate. *Id.* at 2283. In this regard, both the categorical and modified categorical approaches share the same analytical step: a "compar[ison of] the elements of the crime of conviction . . . with the [definition] of the [ ] crime [under the ACCA]." *Id.* at 2281.

The Tennessee robbery statutes at issue here criminalize the intentional taking of property from the person of another "by violence or putting the person in fear." (emphasis added). The "ordinary use" of the conjunction "or" is "almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v.* Woods, 134 S. Ct. 557, 567 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). While "or" can "sometimes introduce an appositive[,] a word or phrase that is synonymous with what precedes it," that is not the case here. *Id.* The disjunctive phrasing here suggests two alternative elements. In *Descamps*, the Supreme Court treated as divisible an illustrative burglary statute featuring "entry into a building *or* an automobile." 133 S. Ct. at 2281 (emphasis in original). So long as certain other conditions were met, an individual could commit burglary by entering a building or by entering an automobile. Similarly, Tenn. Code Ann. § 39-2-501(a) specifies robbery as a "taking . . . by violence or putting . . . in fear." This wording is nearly identical in the current statute, which describes robbery as a "theft . . . by violence or putting . . . in fear." Tenn. Code Ann. § 39-13-401. Both forms of the robbery statute are in line with the construction of the example burglary statute highlighted by the Court as divisible.

Reinforcing this conclusion is the Supreme Court's guidance in *Johnson*, 559 U.S. at 136-37. In that case, the Court considered a Florida state battery statute, in which battery is defined as occurring "when a person either '1. [a]ctually and intentionally touches or strikes another person against [his] will,' or '2. [i]ntentionally causes bodily harm to another person.'" *Id.* at 136 (quoting Fla. Stat. § 784.03(1)(a)). There, the Court explained that "[b]ecause the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways." *Id.* (citation omitted). Specifically, "[i]t can prove that the defendant

'[i]ntentionally caus[ed] bodily harm,' that he 'intentionally str[uck]' the victim, or that he merely '[a]ctually and intentionally touche[d]' the victim." *Id.* at 136-37. Rather than treating the first part of the battery statute as setting forth a single element, the Court treated the language "touches or strikes" as comprising two alternative elements. The Court unequivocally confirmed that its decision in *Johnson* "rested on the explicit premise that the law[] contained statutory phrases that cover several different . . . crimes, not several different methods of committing one offense." *Descamps*, 133 S. Ct. at 2285 n.2 (internal quotation marks and brackets omitted). Similarly, the Tennessee robbery statutes at issue here, which feature the language "by violence . . . or putting in fear," enunciate two alternative elements. Therefore, Mitchell's recasting the statutes as indivisible and overbroad is incorrect.

Although the Tennessee robbery statutes are divisible, we need not defer to the modified categorical approach to determine which alternative formed the basis of Mitchell's prior conviction. As already discussed, neither alternative element departs from the definitions provided in the "use of physical force" clause or the residual clause. Even if, as Mitchell contends, robbery under Tennessee law is considered indivisible, the finding would have no bearing on our decision. An indivisible statute merely limits the court to undertaking the formal categorical approach; it presents "no uncertainty" as to which element formed the basis of the prior conviction and, as such, "the categorical approach needs no help from its modified partner." *Id.* at 2286. A straightforward application of the categorical approach has revealed that the robberies for which Mitchell was convicted are categorically violent felonies, under both the "use of physical force" clause and the residual clause.

Lastly, Mitchell argued that the district court erred in using his 2003 robbery conviction as an ACCA predicate despite having entered an *Alford* plea, where he claims to have only stipulated to the facts of a violent felony, but never admitted guilt as to those facts. However, as Mitchell concedes, "an *Alford*-type plea does not prevent the resulting conviction from ever serving as a predicate

conviction for sentence enhancement." *McMurray*, 653 F.3d at 381. "Convictions based on *Alford*-type pleas can be predicate convictions under the ACCA if the qualifying crime is inherent in the fact of the prior conviction—i.e., if the statute of conviction is categorically a 'violent felony' . . . ." *Id.* Given that robbery under Tennessee law is categorically a violent felony, Mitchell's argument fails.

**2.      Mitchell's Characterization of his 1988 Conviction as an "Act of Juvenile Delinquency"**

The government argues that Mitchell never made the claim below that his 1988 conviction for robbery was an "act of juvenile delinquency" under the ACCA and thus has forfeited his right to raise on appeal a challenge based on that distinction. Mitchell, without support or explanation, treats his 1988 conviction for robbery as an "act of juvenile delinquency" and argues, in light of the self-imposed designation, that the government was required to show he used or carried a firearm, knife, or explosive device during the crime. We assume, without deciding, that Mitchell's claim has not been forfeited and move on to the merits, reviewing de novo the question of whether his 1988 adult conviction for robbery, committed at the age of seventeen, qualifies as a predicate offense.

Directly on point is our previous disposition in *United States v. Banks*, 679 F.3d 505 (6th Cir. 2012). In that case, the defendant expressly objected to the PSR's classification of his adult conviction for robbery as a violent felony, which, like Mitchell, was committed at the age of seventeen and charged under Tennessee law. *Id.* at 506. In light of § 924(e)(2)(B) employing the disjunctive "or," we ruled that "regardless of whether [the defendant's] robbery qualifies as an 'act of juvenile delinquency,' his *adult conviction* for that robbery falls under the definition of 'violent felony' as a 'crime punishable by imprisonment for a term exceeding one year.'" *Id.* (emphasis in original) (citing Tenn. Code Ann. §§ 39-13-401(b), 40-35-111(b)(3) (setting the minimum penalty for robbery at three years' imprisonment); *United States v. Taylor*, 301 F. App'x 508, 522 (6th Cir. 2008) (citing *United States v. Spears*, 443 F.3d 1358, 1360-61 (11th Cir. 2006); *United States v. Lender*, 985 F.2d 151, 156 (4th Cir. 1993)) (holding that, under the disjunctive definition of

violent felony, the first part of the definition applies to adult convictions, even if the conviction involves an act committed as a juvenile).

There is no doubt that Mitchell's 1988 robbery conviction was an adult conviction. In the PSR, Mitchell's criminal history is divided into "juvenile adjudications" and "adult criminal convictions"; the 1988 robbery is documented under the latter category. The conviction was obtained in adult criminal court (Shelby County Criminal Court). Moreover, under the Tennessee statute in effect at the time, simple robbery was punishable by imprisonment for not less than five years nor more than fifteen years. Tenn. Code Ann. § 39-2-501(a). If a defendant had little or no prior criminal record, he would normally be sentenced within Range I as a standard offender. *See* Tenn. Code Ann. § 40-35-105. A Range I sentence can be within the range of five to ten years. Tenn. Code Ann. § 40-35-109(a) (Supp. 1986). Therefore, at a minimum, Mitchell would have been subject to five years' imprisonment. Ultimately, he received an adult sentence—an eight-year term of imprisonment in the Tennessee Department of Corrections. His 1988 adult conviction clearly comports with the ACCA's definition of "violent felony" and so qualifies as a predicate offense.

Mitchell's reliance on *United States v. Wells*, 473 F.3d 640 (6th Cir. 2007), is misplaced. In *Wells*, we openly prefaced that "[a]t issue in this appeal is not an attempt to classify an *adult conviction* as a predicate offense for armed career criminal purposes, but rather a *juvenile adjudication*." *Id.* at 648 (emphasis in original). Therefore, the case is distinguishable and of no aid to Mitchell.

**AFFIRMED**.