NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0039n.06

No. 21-6219

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 19, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| TOMMY LEE HUBBARD, JR., | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: STRANCH, MURPHY, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Tommy Lee Hubbard, Jr. appeals his 60-month sentence for one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hubbard challenges two aspects of his sentence. He argues that the court improperly applied an enhanced base offense level under USSG § 2K2.1(a)(4)(A), which applies to defendants with a prior felony conviction of "either a crime of violence or a controlled substance offense." Hubbard also argues that the district court improperly applied USSG § 2K2.1(b)(6)(B), which authorizes a four-level enhancement when the defendant used or possessed the firearm "in connection with another felony offense." Because the sentencing court properly applied these enhancements, we **AFFIRM** Hubbard's sentence.

## I. BACKGROUND

In March 2021, law enforcement officers executed an outstanding arrest warrant for Hubbard while he was staying at another person's apartment in Chattanooga, Tennessee. Officers

approached the door to this apartment, knocked, and announced "police with a warrant, open the door." The resident of the apartment answered the door, and Hubbard was observed standing behind her. After Hubbard stated that he did not reside there, the resident gave consent for law enforcement officers to search the apartment.

Officers found a loaded firearm—a Taurus .40 caliber pistol—in a storage container inside the bathroom closet. Inside the same container as the pistol, officers also found a clear zip-top plastic bag containing smaller baggies of what appeared to be marijuana, along with a digital scale. The "field weight" of the substance was approximately 107 grams, which an officer estimated to be "a couple of ounces of marijuana" without the weight of the packaging. Hubbard voluntarily surrendered to the officers, who arrested him and transported him to jail. After waiving his *Miranda* rights and agreeing to speak with the officers, Hubbard admitted that the gun, the scale, and the "weed" were his. Officers also spoke with the resident of the apartment. She stated that when the officers had knocked on the door, Hubbard "ran onto the balcony, came back into the apartment, and ran into the bathroom area," which was "where the plastic bin with the items was recovered."

Hubbard was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty. Based on Hubbard's calculated offense level (21) and criminal history category (V), the Presentence Investigation Report (PSR) recommended a Guidelines range of 70 to 87 months' incarceration. In calculating Hubbard's total offense level, the PSR recommended an enhanced base offense level of 20 pursuant to USSG § 2K2.1(a)(4)(A), which is applicable under the Guidelines when the defendant "committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(4)(A). This enhancement was based on Hubbard's prior

conviction for robbery under Tennessee law. The PSR also recommended applying a four-level enhancement pursuant to USSG § 2K2.1(b)(6)(B) for possessing a firearm "in connection with another felony offense." The other felony offense was Hubbard's possession of "a felony amount of marijuana." After a three-point reduction for acceptance of responsibility under USSG § 3E1.1, the PSR calculated a total offense level of 21.

Hubbard objected to the enhanced base offense level, arguing that his prior conviction for robbery under Tennessee law did not qualify as a "crime of violence" under USSG § 4B1.2(a). But the district court overruled Hubbard's objection, determining that it was "well settled that a conviction for Tennessee robbery is a crime of violence under the United States sentencing guidelines." Hubbard also objected to the four-level enhancement for possessing a firearm in connection with another felony offense. He argued that the Government could not prove facts to support the occurrence of another felony. Specifically, because the Government had failed to test the marijuana for its THC content, and marijuana containing less than 0.3% THC is legal under Tennessee and federal law, the Government could not prove he possessed illegal marijuana. The district court overruled this objection, finding that the Government proved "it was [illegal] marijuana" based on "all the evidence" including the "defendant's own behavior at the scene when he was arrested."

The district court adopted the PSR's recommendation and calculated a total offense level of 21, criminal history category of V, and a Guidelines range of 70 to 87 months' incarceration. Hubbard then requested a downward variance from this range, arguing that his criminal history was overstated. Hubbard had received 6 points for offenses he committed when he was 18 years old. The Government opposed the request, but the district court granted the downward variance, ultimately sentencing Hubbard to 60 months in prison. This timely appeal followed.

## II. ANALYSIS

### A. The USSG § 2K2.1(a)(4)(A) Enhancement for a Prior "Crime of Violence"

The first issue on appeal is whether Hubbard's prior robbery conviction under Tennessee law qualifies as a "crime of violence" as defined in the Guidelines. The so-called elements clause of USSG § 4B1.2(a) provides that a crime of violence is a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." To determine whether an offense is a crime of violence under the Guidelines, we employ a categorical approach, looking "to the elements of a defendant's prior offenses, rather than the facts supporting the defendant's convictions." *United States v. Butts*, 40 F.4th 766, 770 (6th Cir. 2022) (citing *United States v. Camp*, 903 F.3d 594, 599 (6th Cir. 2018)). This approach assumes that "the defendant was convicted based on the least culpable conduct criminalized under the predicate offense and then ask[s] whether the conduct would satisfy the Guidelines' definition of 'crime of violence.'" *Id.* (citing *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017)). A district court's determination that a prior offense constitutes a crime of violence is reviewed *de novo*. *Id.* (citing *United States v. Cooper*, 739 F.3d 873, 877 (6th Cir. 2014)).

Tennessee's robbery statute provides that "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Our circuit determined in *United States v. Mitchell*, 743 F.3d 1054, 1059-60 (6th Cir. 2014), that robbery as defined by Tennessee law is a "violent felony" under the Armed Career Criminal Act (ACCA)'s elements clause, which parallels the Guidelines' elements clause. *See United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017) ("We have not hesitated to use authority interpreting the elements clause in the Armed Career Criminal Act in interpreting the same phrase in the Guidelines."). Tennessee law defines robbery as theft either by violence or by

"fear of bodily injury and of present personal peril from violence offered or impending," which corresponds with the elements clause's requirement that a crime of violence has as an element the use or threatened use of physical force. *See Mitchell*, 743 F.3d at 1059 (quoting *State v. Taylor*, 771 S.W.2d 387, 398 (Tenn. 1989)); *see also* USSG § 4B1.2(a).

Hubbard first argues that Tennessee robbery is not a crime of violence under the Guidelines because a defendant can be convicted of robbery by threatening force or putting someone in fear *negligently* rather than *intentionally*. He asserts that *Mitchell* was abrogated by *Elonis v. United States*, 575 U.S. 723 (2015), and *Borden v. United States*, 141 S. Ct. 1817 (2021), in which the Supreme Court held that crimes committed with a merely reckless or negligent *mens rea* do not qualify as crimes of violence. But our recent decisions in *United States v. Belcher*, 40 F.4th 430 (6th Cir. 2022), and *United States v. Riddle*, No. 21-5416, 2022 WL 2679102, at *1 (6th Cir. July 12, 2022) foreclose this argument.[1] *Belcher* reaffirmed *Mitchell*'s holding that Tennessee robbery is a crime of violence despite the defendant's arguments that "a defendant can be convicted of that offense by threatening force negligently rather than intentionally" or by "negligently caus[ing] his victim to experience fear." *Belcher*, 40 F.4th at 431-32 (discussing *Taylor*, 771 S.W.2d at 398, and *State v. Witherspoon*, 648 S.W.2d 279, 281 (Tenn. Crim. App. 1983)); *see also Riddle*, 2022 WL 2679102, at *1. Finding no basis "to conclude that *Mitchell* misapprehends Tennessee law," we adhered "to our earlier holding that robbery as defined by Tennessee law is a violent felony under the ACCA," and therefore a crime of violence under the Guidelines. *Belcher*, 40 F.4th at 432; *see Riddle*, 2022 WL 2679102, at *1.

---

[1] These cases were pending when Hubbard filed his opening brief but were decided before he filed his reply. Perhaps recognizing that these cases are issue-determinative here, Hubbard abandons this argument in his reply.

Next, Hubbard argues that robbery under Tennessee law is not a crime of violence because robbery-by-fear can be committed by threatening to falsely accuse the victim of sodomy. Based on dicta in an 1846 Tennessee Supreme Court case, Hubbard argues that robbery-by-fear can be committed by falsely accusing the victim of the "*crimen innominatum*," *i.e.*, sodomy. *Britt v. State*, 26 Tenn. 45, 46 (1846). *Britt*'s actual holding is that "[t]he fear constituting an element of the crime is a fear of present personal peril from violence offered or impending." *Id.* Accordingly, *Britt* reversed the conviction of a defendant who had committed robbery by "falsely charging" the victim "with the commission of a felony." *Id.* The court did note the existence of a possible exception to the rule that robbery cannot be committed by threatening to falsely accuse the victim of a crime. It suggested that "threatening to prosecute an innocent man for . . . the *crimen innominatum*" could constitute robbery because of the "over-whelming and withering character of the charge and its damning infamy, so well calculated to unman and subdue the will and alarm the fears of the falsely accused."[2] *Id.*

The Government argues that later Tennessee decisions have left that possible exception "if it exists, to languish as dicta." Hubbard fails to point to any case that has cited *Britt* for the proposition that robbery could be committed by falsely accusing the victim of sodomy.[3] Cases that have cited *Britt* have cited it for the proposition that robbery-by-fear requires "fear of 'bodily

---

[2] This reasoning may have been abrogated by *Campbell v. Sundquist*, 926 S.W.2d 250 (Tenn. Ct. App. 1996) (appeal denied), which struck down as unconstitutional Tennessee's Homosexual Practices Act and its criminalization of same-sex intimate sexual conduct. *Id.* at 266. *See also Lawrence v. Texas*, 539 U.S. 558, 563, 578 (2003). Moreover, Congress recently passed the Respect for Marriage Act, federally recognizing the validity of same-sex marriages. *See* Pub. L. 117-228, 136 Stat. 2305 (2022).

[3] This is what distinguishes the present case from *United States v. White*, 987 F.3d 340 (4th Cir. 2021), where the Fourth Circuit certified a question to the Virginia Supreme Court, asking whether Virginia common law robbery could be committed by accusing the victim of sodomy. There, numerous Virginia decisions had recognized the so-called "sodomy exception." *Id.* at 344-45. Hubbard has not shown that the same is true in Tennessee, nor requested that we certify a question to the Tennessee Supreme Court asking whether robbery-by-accusation-of-sodomy exists under Tennessee law.

danger or impending peril to the person.'" *See, e.g.*, *State v. Bowles*, 52 S.W.3d 69, 80 (Tenn. 2001). Indeed, that is why we have held that robbery under Tennessee law satisfies the elements clause of the ACCA, as well as the Guidelines. *See Mitchell*, 743 F.3d at 1059; *Belcher*, 40 F.4th at 432.

The sentencing court did not err when it applied an enhanced base offense level pursuant to USSG § 2K2.1(a) for Hubbard's prior conviction for robbery under Tennessee law. The district court was correct that it is "well settled that a conviction for Tennessee robbery is a crime of violence under the United States sentencing guidelines."

**B.      The Enhancement for Possession of a Firearm in Connection with Another Felony Under USSG § 2K2.1(b)(6)(B)**

Hubbard's next argument is that the district court erred in applying the four-level enhancement for possessing a firearm in connection with another felony offense under USSG § 2K2.1(b)(6)(B) because the Government presented insufficient evidence to show that he possessed illegal marijuana. He argues that, because it is legal under Tennessee and federal law to possess marijuana containing a concentration of less than 0.3% of THC, the Government was required to test the marijuana-like substance found during the search to prove it was *illegal* marijuana.

"In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, 'we review the district court's factual findings for clear error and accord due deference to the district court's determination that the firearm was used or possessed in connection with the other felony, thus warranting the application of the enhancement.'" *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (quoting *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011) (cleaned up)). "The Government bears the burden of establishing the factors supporting this enhancement by a preponderance of the evidence." *Id.* (citation omitted).

Hubbard does not dispute that the Government established the following facts at the sentencing hearing, through testimony by Special Agent Adam Baldwin of the Bureau of Alcohol, Tobacco, Firearms, and Explosives:

- Hubbard called the substance "weed."

- The substance was packaged in "corner baggies" or "sandwich bags" which are typically used to contain controlled substances.

- The packaging had none of the hallmarks of the packaging used for legal CBD products or hemp, like brand names, store names, or other markings.

- After seeing the police, Hubbard ran into the bathroom area where the substance was later found.

- The amount of the substance was more consistent with distribution than personal use.

- The substance was found with a digital scale.

- The substance was found with a loaded gun.

Hubbard himself has never stated whether the substance was illegal marijuana or legal cannabis, hemp, or CBD; he referred to it only as "weed." Instead, he contends that none of this circumstantial evidence shows that the THC content of the marijuana exceeded the legal threshold, which he posits is required. Hubbard, however, provides no case precedent establishing that the Government must perform a lab test to support the application of the sentencing enhancement in these circumstances. Even "in the more demanding context of a criminal trial," we have long held that "scientific identification of a substance is [not] an absolute prerequisite to conviction for a drug-related offense," and that the "government may establish the identity of a drug through cumulative circumstantial evidence." *United States v. Malone*, 846 F. App'x 355, 361 (6th Cir. 2021) (alteration in *Malone*) (quoting *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988));

*see also United States v. Swift*, 276 F. App'x 439, 442 (6th Cir. 2008) ("[T]he lack of a lab report is not dispositive.").

The facts in this record, especially the close proximity of the pistol, the scale, and the bag of marijuana inside the same storage container, support the application of the § 2K2.1(b)(6)(B) sentencing enhancement. *See United States v. Shanklin*, 924 F.3d 905, 921 (6th Cir. 2019) (noting that while "we have never established a bright-line test," the proximity "of the weapon to drugs is often a key factor in applying the enhancement under § 2K2.1(b)(6)(B)"); *see also Taylor*, 648 F.3d at 432 (explaining that the "proximity of the gun to the drugs" is a relevant factor to be considered). "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Stafford*, 721 F.3d 380, 400 (6th Cir. 2013) (quoting *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008)). The sentencing court did not clearly err when it found that the cumulative and circumstantial evidence showed that the substance in this case was—more likely than not— illegal marijuana, making the four-level sentencing enhancement applicable.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** Hubbard's sentence.