**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0230n.06
Filed: May 5, 2008

**06-1306**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RONALD EUGENE SWIFT, II, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

**PER CURIAM.** In this appeal, defendant Ronald Eugene Swift contends that there was insufficient evidence to sustain the second of his two convictions for distribution of five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), that were based on controlled buys made on February 27, 2004, and March 6, 2004, respectively. He rests his argument on what appears from the record to be a simple misstatement in the testimony of the government's chemist. Swift posits that because the forensic chemist who tested the substances sold by Swift stated that his lab received both samples on March 1 and because it is uncontroverted that the government did not seize the second sample until March 6, the district court should have granted his Rule 29 motion with regard to the second count. Because a rational trier of fact could conclude that the chemist mistakenly stated that the second sample was received on March 1, but otherwise credit his testimony

that the substance seized on March 6 was cocaine base, there is sufficient evidence to support Swift's conviction on count two. We therefore affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

After a jury trial, Swift was convicted of two counts of distribution of five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), arising from two separate controlled buys made by a government informant on February 27 and March 6, 2004, respectively. The government informant, Ashanti Jackson, made the controlled buys from the defendant, whom she knew as "Ron-Ron," in an attempt to secure favorable treatment for her boyfriend, who had been arrested for distributing crack cocaine.

The testimony at trial established that on February 27 – under the supervision of DEA agents – Jackson made a controlled buy from Swift of one ounce of crack cocaine. On March 6, Jackson made a second controlled buy, this time of two ounces of a substance that Swift represented as, and which appeared to Jackson and officers to be, crack cocaine. Although Jackson attempted to set up a third buy, she was unable to reach Swift again. Both buys occurred at or near Swift's grandmother's house, and Jackson, as well as the DEA agents involved, identified Swift as the seller. The government also presented phone records and an audio recording in support of their case against Swift.

The crack cocaine involved in the February 27 buy was admitted into evidence without objection as exhibit 101 and that involved in the March 6 buy was admitted into

evidence without objection as exhibit 107. The DEA agent through whom the exhibits were admitted, Margo Anderson, specifically testified that exhibit 107 contained "the two ounces of crack cocaine we purchased on March 6."

The government's forensic chemist, Odiest Washington, testified that he had subjected both exhibits 101 and 107 to various tests and concluded that exhibit 101 contained 22.4 grams of 77 percent pure cocaine base and that exhibit 107 contained 44.4 grams of 73 percent pure cocaine base. The government did not submit Washington's lab report into evidence. During cross-examination, Washington testified that both exhibits were received by his lab on March 1, 2004, that he checked them out of the lab's evidence vault on March 10, 2004, and that he ran the tests on March 12, 2004. Defense counsel did not point out the discrepancy between the March 1 and March 6 dates to the witness or press him to explain further, and government counsel, who apparently did not catch the discrepancy, did not attempt to clarify the issue on redirect.

At the close of the government's evidence, defense counsel made a Rule 29 motion to dismiss count two "for the failure of the prosecution to present any laboratory analysis of anything seized on March 6," stressing the "physical impossibility" that the lab received exhibit 107 on March 1. The government's attorney, who was taken by surprise by the argument concerning a discrepancy in the dates, insisted that any discrepancy went to the weight of the evidence, not its admissibility, and that there was otherwise sufficient

evidence to establish that exhibit 107 was seized on March 6 and was indeed crack cocaine.  The district court agreed and denied the motion, explaining:

> With respect to whether the exhibit that was obtained was the same one that was seized, I suppose that could go to the chain of custody although exhibit 107 was received without objection in this court.
>
> I do believe that the exhibit is properly before the court, and the witness, Mr. Washington, did testify that it was a controlled substance consisting of 44.4 grams of 73 percent pure cocaine base.
>
> Consequently, I do think the government has offered evidence from which a jury could conclude, if believed, the elements of a crime in count 2 beyond a reasonable doubt.  And I tend to agree with the observation that the discrepancy goes to the weight and not the admissibility; it's certainly a point for argument but not one that I believe would preclude the jury from making an assessment and considering the count.

After the court denied his Rule 29 motion, the defendant rested without offering any evidence.  In closing argument, defense counsel focused on the March 1 – March 6 discrepancy, but the jury convicted on both counts, apparently concluding that the discrepancy in the dates was a mistake or misstatement on the part of the chemist, but that his testimony that exhibit 107 was cocaine base was otherwise credible, as was Anderson's testimony that exhibit 107 constituted the purported contraband sold by the defendant on March 6.  This conclusion is in line with an instruction given to the jury regarding consideration of witnesses' testimony, which read in pertinent part, "[i]t is up to you to decide if a witness' testimony was believable and how much weight you think it deserves.  You are free to believe everything that a witness said or only part of it, or none of it at all."  The defendant received a sentence of 180 months.

Swift now appeals the denial of his Rule 29 motion. He contests only the narrow issue of whether, as a matter of law, because of the discrepancy in dates and the purported lack of a lab report concerning the second controlled buy, there was insufficient evidence that the March 6 substance was cocaine base. He does not otherwise question the sufficiency of the evidence supporting either count one or the other elements of count two.

**DISCUSSION**

We review *de novo* a district court's denial of a Rule 29 motion. *See United States v. Talley*, 194 F.3d 758, 764 (6th Cir. 1999). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Circumstantial evidence may satisfy the standard, and the evidence need not be such that it excludes every reasonable hypothesis except that of guilt. *See United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (internal quotation marks and citation omitted).

Swift contends that "from this record we cannot know the identity of the substance police seized on March 6, 2004." He correctly acknowledges that case law supports the conclusion that the lack of a lab report is not dispositive. *See United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988) ("To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related

offense, and we too are unwilling to announce such a rule."); *United States v. Covington*, 133 F.3d 639, 644 (8th Cir. 1998) ("It is well established that the identity of a controlled substance can . . . be proved by circumstantial evidence and opinion testimony.") (internal quotation marks and citation omitted); *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) ("[N]either expert testimony nor a chemical test of the substance sold is required to prove distribution of a controlled substance.").

Swift is incorrect, however, in his assertion that Washington's testimony was "fatally flawed," a proposition for which he offers no authority. Viewing the testimony in the light most favorable to the government, as we must in a sufficiency challenge, a logical explanation for the discrepancy in the dates is that Washington was simply mistaken about when the second sample reached his lab, perhaps confusing the actual date of receipt with the date on which the first sample arrived, a rational conclusion the trier of fact would be entitled to draw from the whole of the evidence presented. *See* Sixth Circuit Criminal Pattern Jury Instruction 1.07- Credibility of Witnesses ("You are free to believe everything that a witness said, or only part of it, or none of it at all. . . . [I]f you believe that the witness was inconsistent . . . [a]sk yourself if it seemed like an innocent mistake. . . ."). And, despite Swift's assertion that Washington's misstatement left the jury with no evidence upon which to conclude that exhibit 107 was the substance seized on March 6 and that it was indeed crack cocaine, Anderson's testimony that exhibit 107 contained "the two ounces of crack cocaine we purchased on March 6," combined with Washington's testimony that exhibit 107 was 73 percent pure crack cocaine base, provided the jury

sufficient evidence from which to conclude that the substance in question was seized on March 6 and was crack cocaine, as alleged in the indictment.

**CONCLUSION**

For the reasons set out above, we conclude that the district court did not err in denying the defendant's Rule 29 motion and, therefore, we AFFIRM the judgment of conviction.