NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0117n.06

No. 20-1638

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TERRANCE MALONE,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 05, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

BEFORE: GIBBONS, WHITE, and THAPAR, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

Defendant Terrance Malone appeals the revocation of his supervised release. He argues that the district court erred by relying on unreliable hearsay evidence for six of his seven violations, and that there was insufficient evidence to support all seven violations. We affirm.

## I.

In 2007, Malone pleaded guilty to one count of Possession of Cocaine Base with Intent to Distribute, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C)(iii), and one count of Using and Carrying a Firearm in Relation to a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A)(i). The district court sentenced him to 165 months in prison and three years of supervised release. He was released from prison on April 4, 2017, and began his term of supervised release.

On September 29, 2017, the district court revoked Malone's supervised release for several violations, including possession and use of marijuana, and sentenced him to eight months in prison to be followed by twenty-eight months of supervised release. Relevant here, the conditions of

supervised release required Malone to: refrain from committing new crimes; avoid interacting with persons known by him to be convicted felons or engaged in criminal activity; refrain from possessing or using any alcoholic beverages; refrain from unlawfully possessing or using any controlled substance; notify his probation officer within seventy-two hours of being arrested or questioned by law enforcement; and pay $80 each month toward restitution and criminal fines.

On May 17, 2018, Malone was released from prison and began his new period of supervised release. Between March and June 2020, three incidents led to another supervised-release revocation proceeding: (1) in March, Malone and convicted felon Samira Jones allegedly made two attempts to commit retail fraud in a Walmart store (Violations 1, 2, and 3); (2) on April 4, Malone's relative (who was heavily intoxicated) told police that Malone and Jones assaulted her, and Malone allegedly failed to report his interaction with police the following day (Violations 4, 5, and 8); and (3) in June, Malone was arrested and found to be in possession of cocaine (Violation 7). As a result of these incidents, Malone's probation officer, Scott Lopofsky, also investigated Malone's restitution payments and discovered that Malone had not made any payments since being released from prison (Violation 6).

**A. Shoplifting Incidents At Walmart in March 2020**[1]

On March 24, 2020, Malone and a female acquaintance, Samira Jones (a convicted felon), entered a Walmart and shopped for several items, including alcoholic beverages. A Walmart video camera captured Malone taking a bottle of wine from a shelf and putting it in his shopping cart. Malone and Jones went to the customer service section of the store to perform a non-receipt return of several items in their cart. Then, after the return process—and without paying for the items they

---

[1] This description comes from Lopofsky's testimony during Malone's revocation hearing. Lopofsky based his testimony on a review of reports describing these incidents generated by Walmart and the police, as well as his independent review of surveillance footage, which was played during his testimony.

took from the shelves—Malone and Jones pushed their shopping cart out of the store, placed the items into Jones's car, and drove away. Walmart identified Malone because he provided identification when performing the non-receipt refund. Walmart identified Jones as well; parking-lot surveillance video captured Jones's license plates, and Walmart traced the plates to Jones. Walmart created a report on the incident and called the police, who investigated and generated a second report. Malone was charged with retail fraud, a state-law crime.

Six days later, on March 30, Malone and Jones went back to the same Walmart and tried to do the same thing. While Malone and Jones were pushing their cart out of the store and into the parking lot, employees from Walmart's Loss Prevention Department confronted them, and after some yelling, Jones and Malone pushed the cart back into the store and drove away in the same car they used the first time.

These two events eventually formed the basis for three allegations of violation of supervised-release conditions: committing new crimes (Violation One); possessing alcohol (Violation Two); and interacting with someone known to be engaged in criminal activity, or someone known to be a convicted felon (Violation Three).

### B. April 4, 2020 Alleged Assault and Battery[2]

On April 4, 2020, Malone's relative, Kadisha Jones, called the police and reported that Malone and Samira Jones assaulted her. When officers arrived, Kadisha seemed intoxicated or under the influence of drugs. Malone's revocation petition alleged that police spoke to Malone about this incident the next day and that he never reported the interaction to probation. But during his revocation hearing, the government offered no evidence or testimony that Malone interacted with police on April 5. This incident led to three more alleged violations of supervised release:

---

[2] This description comes from Lopofsky's testimony during Malone's revocation hearing. Lopofsky based his testimony on a police report that was never introduced into evidence.

association with a convicted felon (Violation Four); failure to notify probation that Malone was questioned by law enforcement on April 5, 2020 (Violation Five); and commission of misdemeanor assault and battery (Violation Eight).[3]

### C. Failure to Pay Restitution and Fine Payments

These incidents prompted Lopofsky to check whether Malone had been making his monthly restitution and fine payments. Lopofsky went to the clerk's office, where payment records showed that although Malone had made payments while in prison, he made no payments since being released. This led to a violation for failure to pay restitution and fines (Violation Six).

### D. June 5, 2020 Arrest for Cocaine Possession[4]

On June 5, police responded to a call reporting an ongoing breaking-and-entering at an apartment building (a house with one upstairs unit and one downstairs unit). Officer Vanderwal arrived and spoke to the property manager, who said the downstairs unit was unlivable but that someone was living there without permission. A neighbor said the people living there had a red Ford Fiesta. While police were on the scene, Malone drove up in a red Ford Fiesta registered to Samira Jones.

Police determined that Malone had two outstanding arrest warrants and placed him under arrest. They performed a pat-down and Malone took a cigarette box out of his pocket. Police found three small plastic baggies with a "white powdery substance, white-yellow powdery substance" inside the cigarette box. R. 121 PID 487-88, 494. Vanderwal testified that the substance was in "tie-off" baggies, and that in previous arrests, he had "seen that similar packaging

---

[3] The government eventually abandoned Violation Eight due to lack of evidence.

[4] Police officer Alex Christopher Vanderwal testified about this incident based on his personal knowledge.

in distributing drugs and drug paraphernalia." *Id.* at PID 488.[5] According to Vanderwal, he and the other four police officers on the scene all concluded that the powder appeared to be cocaine. Malone told police that the powder was "B.C.," a "numbing agent he used to combat a recent dental procedure." *Id.* But there was no commercial packaging indicating that the powder was a dental numbing agent. Police did a field test, and it came back positive for cocaine.[6] This led to a violation for possession of cocaine (Violation Seven).

### E. Revocation Proceedings

The probation department filed a petition to revoke Malone's supervised release, listing the eight violations described above. Violation Seven—possession of cocaine—was a Grade B violation, while the other seven were Grade C violations. Given Malone's criminal history (Category V), the Grade B violation called for a sentencing range of eighteen-to-twenty-four months, while the Grade C violations would have warranted a range of only seven-to-thirteen months. U.S.S.G. § 7B1.4(a).[7] The district court held a hearing on Malone's alleged violations. At the hearing, the government produced two witnesses: Lopofsky and Vanderwal. Lopofsky testified about all the non-cocaine-related violations and Vanderwal testified about the cocaine

---

[5] According to Vanderwal, there was an "initial baggie, and then there was two corners-like tie-off deposits." *Id.* He then answered "[e]xactly" to a follow-up question: "When you say corner-like, like somebody had ripped off the corner of a larger bag and used that to put powder in?" *Id.* While Vanderwal testified, the government showed photos of the baggies and the powder.

[6] Police also sent the powder for lab testing, but the lab had not returned the results by the time of Malone's revocation hearing.

[7] Section 7B1.4(a) of the Sentencing Guidelines offers a matrix for determining sentencing ranges for supervised-release violations, based on (1) an offender's criminal history category at the time of the original sentencing and (2) his or her most serious grade of violation. U.S.S.G. § 7B1.4 cmt. n.1; *id.* § 7B1.1(a). Grade A is the most serious type of violation, while Grade C is the least serious. *Id.* § 7B1.1(a). "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." *Id.* § 7B1.1(b). At the time of his original sentencing, Malone was in Criminal History Category V. During the revocation hearing, both sides agreed on the sentence-range calculations, and neither side raises any issue regarding sentencing calculations on appeal.

violation. Defense counsel did not present any witnesses but raised a standing objection to all hearsay testimony.

For the Walmart-related violations, Lopofsky based his testimony on a review of reports generated by Walmart's Loss Prevention Department and by police regarding the March 24 and March 30 incidents. He also retrieved and reviewed Walmart surveillance footage, and the government played a series of six video clips from this footage, with Loopofsky narrating from the witness stand.[8]

For the April 4 assault-related violations, Lopofsky offered only a brief narration of events, based on his review of a police report generated from the incident. Although the revocation petition alleged that Malone spoke to police officers the following day, Lopofsky never testified that Malone spoke to police officers and the government offered no other proof of that fact during the hearing. The only evidence that Malone was with Samira Jones was a statement that the alleged victim, Kadisha Jones, gave to police. Lopofsky noted that police had "serious doubts" about Kadisha's credibility because she was under the influence of alcohol or drugs when they spoke to her. R. 121 PID 478.[9] For the restitution-related violation, Lopofsky described going to the clerk's office to confirm Malone's failure to make any payments, and the government offered into evidence a printed-out record from the clerk's office showing the same.

Finally, for the cocaine-related violation, the government relied on the testimony of Vanderwal. Vanderwal described Malone's arrest, the discovery of the suspected cocaine and the

---

[8] Lopofsky also testified that he searched for Samira Jones in OTIS—a Michigan Department of Corrections database that tracks people on parole or probation—and determined that Jones was on parole for felony assault of a police officer. The government offered a printout from the OTIS database into evidence.

[9] During closing arguments, the government conceded that it could not prove Violation Number Eight—a Grade C violation for misdemeanor assault and battery stemming from the incident—because there was "just not enough evidence really there to tell one way or the other what happened." *Id.* at PID 503. Despite that concession, the government argued that there was sufficient evidence to support the other two violations related to this incident: association with Samira Jones, a known convicted felon; and failure to report contact with law enforcement.

field-testing process, and identified four photos he took at the scene: two of the suspected cocaine and its packaging, and two depicting the results of the field test. Defense counsel then offered two printed website pages and three articles questioning the reliability of the field-testing process. The government, in response, "stipulate[d] that field tests are not 100 percent, that's why they send things off to the lab." *Id.* at PID 498.

During closing argument, defense counsel reiterated his objection that the testimony was based, in large part, on unreliable hearsay. Turning to the specific violations, he argued that the non-cocaine-related violations (except the restitution-related violation) were unsupported by the evidence.[10] In his discussion of the Walmart-related incidents, defense counsel appeared to concede that Malone and Samira Jones were the ones depicted on the surveillance video.[11] As to the cocaine violation, defense counsel mainly argued that the field test was unreliable. When the court asked counsel to explain the "circumstances under which [the powder] was seized," in "a cigarette box, in a plastic bag, with the corners nipped off, which is classic evidence of drug trafficking," counsel responded that given Malone's past as a drug dealer, it made sense that he would package a dental numbing agent the way he used to package drugs. *Id.* at PID 509-10.[12]

---

[10] When counsel reached the restitution-related violation, he "just renew[ed] that general hearsay objection," without making any sufficiency arguments. *Id.* at PID 507.

[11] *See id.* at PID 504-05 ("In order to be found guilty of retail fraud, there has to be [an] intent element, and none of the evidence that was presented today helps the Court to understand what was the interaction that was going on there at the customer service counter. There was some product given, there was something given back in exchange, a receipt or a card. We don't have any idea whether Mr. Malone or Ms. Jones knew that they were doing something wrong by leaving the store. Perhaps . . . [t]hey thought they had purchased something legitimately. Again, there is just not enough. There is some suspicion here, but it just doesn't weigh far enough in the government's favor. . . . [T]here is [sic] too many questions about what happened at the customer counter there to assume that Mr. Malone knew that he was doing something wrong.").

[12] *See id.* at PID 509 ("[A] drug dealer knows how to bag up stuff or to use it – this is what he's done in the past with product he calls his pain relief. So you know, if he is mixed up, or his girlfriend has mixed up something for him, they know to put it in the things that they used to put their bad stuff in. Their good stuff goes in the same bags that their bad stuff went in. And that is another thing here, is we don't know who mixed this stuff up. . . . maybe Miss Jones does. But . . . were these bags from something – if they are positive, is it possible that it's an old bag she had that had her cocaine in it and now she mixes up some home remedy with B.C., and some of his prescription meds or something like that, crushes it up, because that is just what they do . . . .").

The district court found that Malone committed each violation except assault and battery (Violation Eight). The court noted that the cocaine violation was a "close question," but that "the other ones are not close at all." *Id.* at PID 513. It reasoned that although the positive field test alone may not have been sufficient, the combination of the positive field test, Malone's "blatantly false statement" that the powder was a dental numbing agent, the fact the powder was contained in packaging "indicative of" drug trafficking, and Malone's history of cocaine-related crimes showed by a preponderance of the evidence that the substance was cocaine. *Id.* at PID 514-15.

Because the court found Malone guilty of the Grade B cocaine violation, the court and parties agreed that the relevant sentencing guideline range was eighteen-to-twenty-four months. The court revoked Malone's supervised release and sentenced him to serve eighteen months in prison. Malone then filed this appeal.

## II.

We review a district court's decision to revoke supervised release for an abuse of discretion, its factual findings for clear error, and its legal conclusions de novo. *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009). A district court may revoke a term of supervised release after a final hearing if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015). Malone argues that (1) his six Grade C violations should be reversed because they were based solely on unreliable hearsay evidence from his probation officer; and (2) there was insufficient evidence for all his violations—the six Grade C violations and the Grade B cocaine-possession violation.

We first address the cocaine-possession violation because it is Malone's only Grade B violation and warranted a higher sentencing range than the Grade C violations. "Supervised

release violations are not cumulative," *United States v. Ramirez-Mendoza*, 525 F. App'x 562, 564 (9th Cir. 2013); rather, what matters is the level of the defendant's most serious violation. *See* U.S.S.G. § 7B1.1(b) (if a defendant commits multiple violations of different levels, "the grade of the violation is determined by the violation having the most serious grade."). Thus, if the cocaine-possession violation stands, then the district court properly revoked Malone's supervised release and placed him within the eighteen-to-twenty-four month sentencing range, regardless of the validity of his Grade C violations.

**A.**

Malone raises a hearsay argument for his six Grade C violations but does not make that argument for the cocaine-possession violation. Rather, he argues only that there was insufficient evidence to establish that the powder he possessed was cocaine. That raises a question of fact. Thus, we apply clear-error review. *Kontrol*, 554 F.3d at 1092.

Malone argues that the district court erred by relying on Vanderwal's description of the positive field test indicating that the powder Malone possessed was cocaine. Because field tests are not fully 100% reliable, he argues, there was insufficient proof to support this violation. However, we have recognized—in the more demanding context of a criminal trial—that "scientific identification of a substance is [not] an absolute prerequisite to conviction for a drug-related offense." *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988). In that context, the "government may establish the identity of a drug through cumulative circumstantial evidence." *Id.*; *see also United States v. Swift*, 276 F. App'x 439, 442 (6th Cir. 2008) (noting in the criminal-trial context that the "lack of a lab report is not dispositive" on the issue whether substance was crack cocaine).

The district court expressly stated that it was not relying solely on the field test, and Malone fails to address any of the other considerations the court mentioned. The district court based its conclusion on (i) a positive field test; (ii) testimony from Vanderwal that all five officers on the scene believed the substance was cocaine; (iii) the fact that the powder was packaged in multiple baggies—hidden inside a cigarette box—in a manner characteristic of drug trafficking; (iv) crime-scene photos of the powder, packaging, and field test; (v) the court's factual determination that Malone gave a "blatantly false" explanation for the powder—that it was a numbing agent for his pulled tooth, despite not being packaged in any commercial packaging—and (vi) the fact that Malone had previously been convicted of drug-trafficking offenses involving cocaine.[13] R. 121 PID 513-15. All those factors corroborated the field test.[14]

In sum, the evidence sufficiently supported the district court's finding that the substance Malone possessed was cocaine, and we find no error in the court's revocation of Malone's supervised release and determination that, in light of Malone's Grade B violation, an eighteen-to-twenty-four month sentencing range was appropriate.

**B.**

Because sufficient evidence supported Malone's Grade B violation, we need not address Malone's other arguments—that his less-serious Grade C violations were (i) impermissibly based

---

[13] *Cf. United States v. Whitely*, 356 F. App'x 839, 842, 844 (6th Cir. 2009) (affirming district court's finding that defendant was involved in cocaine smuggling, citing, among other things, the "district court's knowledge of the facts and circumstances of Whitely's prior conviction—which closely mirrored the conduct upon which the government based its revocation request").

[14] Several courts have found similar types of evidence sufficient to support the conclusion that a given substance was cocaine during revocation hearings. *See, e.g.*, *United States v. Faison*, 727 F. App'x 894, 895-97 (8th Cir. 2018) (positive field test, defendant's "evasive answers when asked about" the cocaine, and defendant's "history of cocaine use"); *United States v. Wheeler*, 682 F. App'x 229, 229-30 (4th Cir. 2017) (field test and witness opinion testimony, despite lack of lab testing); *United States v. Clay*, 743 F. App'x 366, 370 (11th Cir. 2018) (field test and police officer testimony that substance appeared to be cocaine, despite absence of lab test); *cf. United States v. Crane*, 599 F. App'x 383, 384 (11th Cir. 2015) (declining to address whether lab report showing that substance was cocaine was improperly admitted because even without lab report, positive field test and police testimony alone sufficed to prove by preponderance that substance was cocaine).

on unreliable hearsay testimony and (ii) not supported by sufficient evidence. Even accepting Malone's arguments, any error would be harmless.

As noted above, in the supervised-release context, the key consideration is the grade of the most serious violation committed. *See United States v. Montgomery*, 893 F.3d 935, 938 (6th Cir. 2018) ("If a defendant has committed multiple violations, then the overall grade will be 'determined by the violation having the most serious grade.'" (quoting U.S.S.G. § 7B1.1(b))). That grade determines the relevant sentencing range, U.S.S.G. § 7B1.4(a), and can also determine whether revocation is mandatory or permissive, *see id.* § 7B1.3(a) ("Upon a finding of a Grade A or B violation, the court *shall* revoke probation or supervised release. . . . Upon a finding of a Grade C violation, the court *may* . . . revoke . . . supervised release . . . ." (emphasis added)); *accord United States v. Jackson*, 422 F. App'x 408, 411 (6th Cir. 2011).

Because the district court did not err in finding that Malone committed a Grade B violation by possessing cocaine, its rulings on Malone's other six Grade C violations "had no effect on the grade of the violation, and thus no bearing on whether [Malone's] supervised release would be revoked or the Guidelines range for the sentence upon revocation." *Jackson*, 422 F. App'x at 411; *see also United States v. Johnson*, 356 F. App'x 785, 793 (6th Cir. 2009) ("[Because] a violation of one condition is sufficient to revoke supervised release, we 'need not address' the additional violations because, even assuming district-court error, that error 'would be harmless.'" (first quoting *United States v. Lindo*, 52 F.3d 106, 108 (6th Cir. 1995))).

## III.

For the reasons stated above, we **AFFIRM.**